Good morning. May it please the court, Michael Tanaka, Deputy Federal Public Defender appearing on behalf of Mr. Castro. There are two issues in this case. The first issue is whether the police had reasonable suspicion to believe that the occupant of the vehicle was engaged in a criminal activity at the time of the stop. The second issue is whether juvenile court records showing that a third person in the commission of a felony fell within the hearsay exceptions for either a judgment or condition of public records. With respect to the stop, we know that the police stopped the car because they ran a license check and found that there was a misdemeanor warrant for a male Hispanic for driving without a license on that Don Duval. With respect to that car? He had driven that particular car without a license. Is that enough for reasonable suspicion? I submit not, Your Honor. Why? There's an insufficient nexus between him and between the warrant for him and the vehicle. His only connection... The description in the warrant is male Hispanic, mid-20s, 5'6", 185, and there is a male Hispanic in his mid-20s sitting in the right front passenger seat. And the warrant was issued as a result of a citation involving that plate. Doesn't that at least justify the police temporarily stopping the vehicle to see if the subject of the warrant is sitting in the right front passenger seat? If the man had been driving, certainly. If... Well, the original citation was for driving without a license. That's correct. Well, hopefully if he's now a good law-abiding citizen, he's riding rather than driving. But that doesn't get him away from the fact that he failed to appear on the first charge. And I agree with the court if... I understand that, but the question is, can you convince me that the law doesn't... What militates against the finding of racial suspicion in this case is that his connection was only driving. That is, he was not the registered owner. That was shown in the same dispatch. But does it matter? I mean, basically we've got a failure to appear warrant associated with that vehicle, and we've got a physical description shown on the face of the warrant that is similar to the description of the passenger then riding in the car. What more did the police... And you, of course, overlooked the mention of the car wanting to make a left turn until they suddenly realized that there was a black and white parked on the street. And then all of a sudden, instead of a left turn, now we're going to go forward through the intersection. Well, that adds very little with respect to the warrant. And obviously, on its own, would not... But we assume that the fight-and-conquer approach in light of U.S. v. European... I can see that there's a totality of the circumstances here. Totality of the circumstances. Nonetheless, the circumstances have to... There's some relation to each other. Well, if you had a warrant out for your arrest and you encountered the police, why would it be unreasonable for a fugitive to decide he didn't want to have face-to-face contact with the police and go in a different direction? He's driving, and he's not driving. It's someone else's driving. No, he tells the driver, you know, don't turn. Get me away from these guys. Well, I submit the facts aren't quite that clear. The factual finding by Judge Greel, do we not, in this case, that there was reasonable suspicion based on the totality of the circumstances, do we review that de novo? The underlying facts are reviewed for... Clear error. Clear error. And you haven't convinced me that any of those facts... I'm still trying. And now I guess we're applying the law of totality of the circumstances. Is that enough under Irivizu and Terry v. Ohio and Adams v. Williams to make the initial stop to pull the car over to the side of the street to ask the passenger, are you Mr. Fugitive? Well, it's relatively clear, and I still submit that there's not a sufficient nexus here. We're still talking about a Fourth Amendment seizure in terms of pulling the car over. In Irivizu and the other car stop cases, the Supreme Court has told us that the state's interest is substantial and the intrusion on the motorist is minimal in order to make a brief inquiry to catch criminals. And we know that there's an outstanding arrest warrant for somebody who might be the person sitting in the right front passenger seat. And we also know that there's arrest warrants for a traffic violation. No misdemeanor arrest warrant is a bookable offense. Well, the facts are what the facts are. Do you want to move on to the other issue? The fact that he's not the owner and has no connection to this car other than he was driving it 10 months before, and clearly whoever that person is wasn't driving it at the time. You think Harris's juvenile adjudication should have been introduced into evidence, I take it, right? Pardon? You think the juvenile adjudication should have been introduced into evidence? That's correct, Your Honor. That might be a stronger argument than the prior one you just made, possibly? Possibly. We'll move to that one. And that is most clearly under 803.22 as a judgment of conviction. Now, the government and the court excluded or have argued that it doesn't fit under that because it's a juvenile conviction. But under the policy of that exception, and it's been applied to foreign judgments, is that because it has all the trappings of due process and constitutional rights. Tell us why it's not harmless. What's your best argument in terms of the harmless error rule? The full defense was that this gun belonged to the passenger, Mr. Perez, in the back seat, and that Mr. Castro in the front seat did not toss it over his shoulder or didn't possess it in that manner. It was in joint possession, right? It was in joint possession. So that Mr. Perez had admitted under criminal compulsion that he, in fact, possessed the gun, at least bolsters the defense that Mr. Castro didn't. Now, I know the government has argued that they could have had serial possession, and certainly that's one theory. But on the other hand, that. Bolster the defense that Perez had exclusive control of the gun and the defendant had no part to play in joint possession, right? Exactly what I was going to say, Your Honor. That's why you claim it was prejudicial. That's correct. I can't say it any better than that. Didn't it come out through the testimony that the right rear passenger, the juvenile, had been arrested as well for possession of a firearm by the officers? Certainly. Okay. And did that person testify at Mr. Castro's trial? The juvenile? Yeah. No. Okay. So what you really wanted to use the juvenile for was not to establish the fact of conviction. You wanted to establish the underlying facts, right? That it was the possession of the same weapon. Possession, yeah, but he possessed the weapon. He admitted possessing the weapon. Yeah, so why did we not have a double hearsay problem? We got hearsay within hearsay. Even if you could get the record of conviction in under 803-8 as a public record, all that gets you is it establishes the fact of the conviction. But you want more. You want the underlying facts that supported it, and you want the jury to believe that those facts from this out-of-court record are true. And that seems to me to be hearsay. The fact of the conviction would corroborate the evidence that was in, as we've just discussed, that Mr. Perez was in the car and was arrested for having the gun, and, in fact, Officer Sinti, he had the gun. So that fact of conviction, we don't necessarily need to say that to prove the facts. The facts are partially there. They just are a corroboration that the gun belonged to Mr. Perez's passenger. But you wouldn't have been satisfied with a simple admission of a court judgment that said, this juvenile was adjudicated a delinquent in juvenile court for possessing a weapon, period. Well, if the adjudicated guilty of possessing a weapon on X date. On X date, after being stopped by police officers in the same location. Well, we'd be satisfied with he admitted the petition, and this is what the petition said, the charging document. He admitted the- He just took the underlying facts, right? Well, as to the extent that the underlying facts are charged in the court document- But the only thing, I mean, we give you a court document that says, here's the judgment of conviction. That doesn't tell you anything about the underlying facts. It doesn't, in connection with the court document, the charging document. Or you want the information. I don't even know if you call it that, the petition in juvenile court. The petition, which is also a court document. Yeah. But you don't want to admit, you want to admit it for proof of what's contained in it, the facts. Well, the fact of conviction is part and parcel of what he was convicted of. We understand your argument, counsel. Your time has expired. We'll hear from the state. This is from the United States. Excuse me. Good morning, and thank you, Your Honor. Sean Nelson for the United States. The two issues in this case, the reasonable suspicion for the traffic stop and the admission of the juvenile records. In both cases, the district court got this call right. Can I ask you a couple of questions about the juvenile adjudication, all right? I think we're talking about 803.22 here, the fact that this is a final judgment adjudicating a person guilty of a crime, and whether or not that's something that really would not be admissible. So let's assume that it would be admissible. You would argue that this would be harmless error, I take it? I would argue that it's harmless error, and even before that I'd argue that the district court got it correct in excluding it under 403. Well, all right, but let's pass that by. I'm concerned about, you know, the fairness of what happened here. From what I gleaned from the record here, that there was a discussion by the parties about the Paris adjudication before openings. That's at the record at page 169. The government had no objection. So you have a defense counsel who gets up and, based upon these representations or these understandings, tells the jury that they're going to find that Paris was adjudicated as being in possession of this villain, and then the district court judge says, no, no, no, we're not going to allow you to do that. Have you read the Gonzales-Maldonado case? It's not from this circuit, but isn't this something that strikes as basically unfair, puts the defendant's lawyer in a bad spot, lets the jury speculate as to what happened with that opening statement? I mean, I'm a district court judge, and I just, you know, always have to think about how to conduct a fair trial. What do you think about the fairness of all of that? Absolutely. As to fairness, if the defense was so certain as to this evidence being admissible, he should not have filed his motion in limine the morning of trial, should not have gone ahead with opening statements in that way until he had received a ruling on the motion in limine that he filed that morning. If you get the blessings of the judge in advance of that means, forget about it, right? That's what you told me was missing here. That's one thing. The second factor of that is the district court did explain to the jury, before opening statements, that opening statements are just a guide as to what may be shown, and the parties may not show everything that they say in opening statements and that you should not hold that against you. Did the judge know that the government had agreed or expressed no objection to Paris's attorney opening up on that issue? The defense attorney told the judge that there was a, quote, unquote, stipulation. Actually, what it was is I was not objecting to the admission of those documents. So the judge knew about that in advance then?  The judge did know about that. The judge should have, yes. So the judge had knowledge that this was exactly what was going to happen during the opening statement. The, when we argued the issue before the judge, that was explained to the judge, I believe that might have occurred after opening statements because the way that opening statements occur in that court, which is an opening statement made to the entire denier, not to the 12-seat judge. But once again, the fact that the government expressed no objection and in effect consented to this opening statement was or was not known to the judge at the time of the opening statement. I did not, the government did not consent. The government was standing silent. And, but still, even if one party does not raise an objection, the district court still is bound by the rules of evidence in play. Parties can't agree to evade the rules of evidence. And since the district court still has a duty to do that, it's still the district court's job to do that to ensure that the rules of evidence are followed. What if the judge did know about it, did know that there was going to be this statement made by defense counsel at openings and then later on ruled against the defense the admissibility of that evidence? Would your position be different? That would be a different situation. And, in fact, the case cited by the defense in this situation, I believe it's Moran, is exactly that situation where the judge said, you may present the defense, the defense you wish to present, and then changed his mind after counsel relying on a judge's ruling that you can go ahead and present this defense, promise that defense, didn't deliver that defense. This situation really is different where this issue is given to the district judge the morning of trial and before seeking clarification on this issue, the defense goes ahead and promises this evidence. So those are the defining circumstances in this particular case that makes it different than those cases where the judge did have knowledge of what was going to happen during the openings. Yes, I believe that is a very significant difference. And the case the defense cites where the judge explicitly says that defense will be admissible then changes his mind really puts the defense in a bad spot. And as to fairness in this situation, what the defense was trying to do here was bring in testimony in lieu of Mr. Perez. There's no reason that this same evidence could not come in in a different way. The defense could have called Mr. Perez. The defense could have called any other person in the car. But the rules of hearsay preclude this evidence so that the declarant in this situation is subject to cross-examination. That presents the fairness to both sides. I think at one point you mentioned harmless error. Is that because the essential facts came out in proof at trial as to what happened inside the car when the red lights came on? Yes, that is exactly correct, Your Honor. The government's witnesses themselves established the facts that the defense is trying to establish in this case. The government's witnesses themselves said Mr. Perez possessed that firearm. And to opposing counsel, Your Honor's posed the question about doesn't this bolster exclusive possession? The government argues that it does not. Had this been a case where the government was arguing joint simultaneous possession, this conviction could be evidence of that and could be relevant of that. But in this case, the government's entire theory of this case from beginning to end is that both people did, in fact, possess that firearm. Defense argued that in opening statement. The government said that in opening statement. The government's witnesses said both persons possessed the firearm.  And the government argued it in closing arguments that both persons possessed the firearm. So proof for Perez's possession is really quite not relevant here in the context of this case. The additional piece of evidence, the exclusion of that is harmless error. The evidence did prove that Mr. Perez possessed the firearm. Would that even be relevant actually, you know, in the context of this case, let alone harmless error? Would that be an overstatement? I don't believe that would be an overstatement. If Mr. Perez possessed the firearm after defendant possessed it, that in no way vitiates the defendant's prior possession of it. And even if it's not completely irrelevant, that goes directly to the heart of the 403 argument and the balancing, that it is of such minor relevance that its exclusion, it was proper. Under theories of misleading the jury and confusing the issues, where the jury instructions proposed by the defense in this case, proposed half of the possession instruction approved by the Ninth Circuit. The defendant was trying to confuse the jury. The judge would not allow that to happen. That's the government's argument, yes. That under the combined with the defense's instruction, which omitted the concept of joint and serial possession, and the defense's proffered mere presence instruction, shows that that's the direction that this was going. The district court was correct in heading it off. Additionally, there's the consumption of time because of the rebuttal evidence that was discussed that the district court had ruled that would be admissible from the government. The juvenile takes the fall for the older gang member. Right. U.S. versus Padilla in our papers, four square on point admitting that sort of evidence. Anything further? No, Your Honor. Thank you. The case just argued will be submitted for decision, and we will hear argument next in Milkowski versus Thane International. And for those of you involved in the final two cases, we will be taking a break after the argument of this case.
judges: Block, O'scannlain, Tallman